IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOHN NANCI, o/b/o
      Penelope Jacob (deceased),

              Plaintiff,                      No. 3:10-cv-6363-HZ

     v.

COMMISSIONER of Social              OPINION & ORDER
Security,

              Defendant.


Alan Stuart Graf, P.C.
ALAN GRAF, ATTORNEY AT LAW
316 Second Rd.
Summertown, Tennessee 38483

      Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
/ / /


1 - OPINION & ORDER

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-3902

Leisa A. Wolf
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff John Nanci brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) to his deceased wife Penelope Jacob.[1] This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on August 10, 2007, alleging an onset date of December 2, 2000. Id. Her application was denied initially and on reconsideration. Tr. 68-77.

     On December 3, 2009[2], Nanci appeared on plaintiff's behalf, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 31-67. On January 27, 2010, the ALJ found plaintiff not disabled. Tr. 15-30. The Appeals Council denied review. Tr. 1-5.

---

    [1] Although Nanci is technically the plaintiff in the case, having been substituted for his wife who died in 2009, my references to "plaintiff" are to Jacob as the claimant.

    [2] The first page of the hearing transcript states that the hearing was held December 3, 2010. Tr. 31. But, the ALJ's decision states the hearing was in 2009, which, given that the ALJ's decision is dated January 27, 2010, I credit as the correct date.

2 - OPINION & ORDER

FACTUAL BACKGROUND

Plaintiff alleges disability based on having fibromyalgia, chronic myofacial pain, and "bi polar type 1." Tr. 165. At the time of plaintiff's date of last insured, she was thirty-seven years old. Tr. 20, 150. She graduated from college, completed some graduate studies, and attained a certificate as a childbirth assistant. Tr. 36-39, 173. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one

3 - OPINION & ORDER

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

The ALJ initially noted that plaintiff died on September 3, 2009, and found that Nanci, plaintiff's surviving spouse, was the substitute party. Tr. 20. He then found that plaintiff's date of last insured was December 31, 2004, which predated the metastatic melanoma cancer which eventually caused her death. Tr. 20, 24.

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since hers alleged onset date through her date of last insured. Tr. 21. Next, at steps two and three, the ALJ determined that plaintiff had the severe impairment of musculoskeletal syndrome, but that the impairment did not meet or equal, either singly or in combination, a listed impairment. Tr. 23.

4 - OPINION & ORDER

At step four, the ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform light work. Tr. 23-25. Based on this RFC, the ALJ determined that plaintiff was able to perform her past relevant work as a midwife. Tr. 25-26. Alternatively, at step five, the ALJ determined that plaintiff was able to perform jobs that exist in significant numbers in the economy such as small product assembler, cafeteria attendant, and cleaner/housekeeper. Tr. 26. Thus, the ALJ determined that plaintiff was not disabled. Id.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation omitted).

## DISCUSSION

Plaintiff contends that the ALJ failed to give sufficient reasons for rejecting Nanci's testimony, failed to properly evaluate plaintiff's impairments at step two, and as a result of the

first two errors, failed to develop an RFC that accounted for all of plaintiff's limitations.

I.  Nanci's Testimony

  Nanci testified that in the period from the alleged onset date of December 2000 to the date of last insured in December 2004, plaintiff had "poor days" where she did nothing productive, including not accomplishing basic household duties of laundry and cooking.  Tr. 39.  Sometimes this would go on for days or weeks at a time.  Id.  He described her as acting "quite irrational" and having "irrational arguments."  Tr. 40.  When the ALJ asked Nanci to describe what he meant, he said that plaintiff would pick fights and that Nanci would find himself in the middle of an argument without knowing what it was about.  Id.  He stated it was more than the "normal bickering" between couples because the arguments occurred two to four times per week.  Id.  He acknowledged that with treatment from the counselor they often saw together, their fights "decreased [to] maybe two, once a week, once a month."  Id.

  Nanci testified that plaintiff was an avid reader, and together, they raised sheep and goats.  Tr. 41-42.  Plaintiff, however, had little stamina and Nanci ended up doing most of the work with the animals.  Tr. 42.  Plaintiff did raise bees herself, although, according to Nanci, she became less capable of dealing with them over time.  Id.

  Nanci explained that plaintiff exhibited signs of depression such as general unhappiness with her life which sometimes led her to immerse herself in reading to the exclusion of doing anything else.  Tr. 43.  He indicated that her condition varied during the four-year period at issue, meaning she would appear to be particularly depressed for one or two days and rarely get out of bed, and then be relatively fine for a couple of weeks where she contributed to cooking and household chores.  Id.  Sometimes, the good spans would last a few days, a week, or a month.

Tr. 44.

Nanci testified that plaintiff was more stressed than others by the day-to-day routines of raising a child.  Tr. 48.  He also described that she had mood changes, sometimes caused by changes in the medications prescribed by the nurse practitioner she was seeing.  Tr. 49.  At times, she was more in a "manic state."  Id.  She would start lots of projects and not complete them.  Tr. 49-50.  Other times, she would not get out of bed, or would only sit in a chair and read.  Tr. 53-54.

In discussing Nanci's testimony, the ALJ began by stating that while plaintiff's "medically determinable impairments could have been reasonably expected to cause symptoms," "Nanci's subjective statements concerning the intensity, persistence and limiting effects of [plaintiff's] symptoms are not credible to the extent they are inconsistent with the [RFC]."  Tr. 24.  He then further discussed Nanci's testimony, including Nanci's assertion that plaintiff's behavior was "irrational."  Id.

The ALJ then discussed the clinic notes of Psychiatric Mental Health Nurse Practitioner (NP) Allyson Mieth-Myers, whom plaintiff saw, sometimes alone and sometimes with Nanci, for counseling from January 2002 to early November 2005.  Id.; see also Tr.  321-91.  The ALJ cited to several pages of NP Mieth-Myers's notes which indicated that communication difficulties were a factor in the relationship between Nanci and plaintiff and that both plaintiff and Nanci had difficulties adjusting to being a parent.  Id.  (citing Tr. 332, 340, 343, 349, 367, 372, 375, 392).  The ALJ found that Nanci's hearing testimony was, overall, analogous to the communication difficulties in the marital relationship described in NP Mieth-Myers's notes.  Id.  However, unlike Nanci's testimony, NP Mieth-Myers, who had a long-term professional relationship with

plaintiff, did not characterize plaintiff's behavior or complaints as irrational.  Tr. 25.  As a result, the ALJ found that Nanci's "characterization of [plaintiff's] behavior will not be accorded greater weight than the extensively documented symptoms and findings reported by [NP Mieth-Myers]." Id.

An ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses.  Valentine v. Commissioner, 574 F.3d 685, 694 (9th Cir. 2009).  Plaintiff argues that the ALJ's consideration of Nanci's testimony was not legally sufficient, ignored significant testimony on issues not discussed by NP Mieth-Myers, and was not specific.  I disagree.

The ALJ begins his discussion of Nanci's testimony with reasoning that I have previously rejected as problematic and legally insufficient.  Cohoon v. Commissioner, No. CV-10-1219-HZ, Opinion at pp. 12-15 (D. Or. Aug. 30, 2011) (discussing how rejection of subjective testimony because the testimony conflicts with the RFC is circular reasoning and legal error).  However, here, the ALJ continues his discussion of Nanci's testimony with an explanation that the testimony is not supported by the more than four years of treatment notes by NP Mieth-Myers.

The ALJ explained that much of Nanci's testimony at the hearing was "analogous" to the treatment notes regarding communication difficulties between Nanci and plaintiff and their difficulties over parenting.  Tr. 24.  Nonetheless, the treatment notes did not suggest that plaintiff ever acted "irrationally" as Nanci testified.  Thus, to the extent Nanci's testimony was consistent with NP Mieth-Myers's notes, it was accepted and to the extent it was inconsistent with those notes, it was rejected.  Accordingly, Nanci's testimony that plaintiff spent days in bed or was grossly incapable of engaging in ordinary activities of daily living, was not accepted because it was not supported by NP Mieth-Myer's notes.  Finding that the lay witness's testimony regarding

8 - OPINION & ORDER

a claimant's limitations is inconsistent with or not supported by the medical evidence is a reason

germane to the witness capable of supporting a rejection of that lay witness testimony.  Glover v.

Commissioner, No. CV-10-824-PK, Op. & Ord. at p. 15 (D. Or. Dec. 6, 2011).  The ALJ did not

err.

II.  Step Two

      At step two, the ALJ determined that plaintiff had a severe impairment of

musculoskeletal syndrome.  Tr. 21.  He noted that the "documentation in this case does not

describe mental impairments producing a more than mild impact on work-related functioning[,]"

and found that "the evidence failed to set forth a mental impairment that could have been

reasonably expected to restrict [plaintiff's] ability to perform regular work-related activities to a

more than minimal degree."  Tr. 21, 22.

      In support, he discussed the records from NP Mieth-Myers and subsequently found that

the opinion of psychologist David R. Truhn, Psy. D., was not relevant.  Tr. 21-22.  The ALJ

indicated that NP Mieth-Myers's records showed that the majority of plaintiff's complaints were

situational stressors that included, but were not limited to, adjustment difficulties and feelings of

increased stress associated with caring for and parenting her child, communication difficulties

with her husband, and mood swings.  Tr. 21.  Both therapy and medication were used to treat her

symptoms with the medications typically producing some positive response.  Id.  In January

2002, NP Mieth-Myers diagnosed plaintiff with major depression, moderate, and generalized

anxiety disorder.  Id. (citing Tr. 390).  During her treatment with NP Mieth-Myers, plaintiff noted

that medications had been "extremely helpful," and she was able to cope with situational

stressors more effectively.  Id.  Although, the ALJ noted, there were periods of symptom

9 - OPINION & ORDER

exacerbation, he found that situational stressors remained contributory.  Id.

The ALJ also found that plaintiff had no more than mild limitations in concentration, persistence, and pace.  Tr. 22.  He noted that NP Mieth-Myers's notes showed improvement in the ability to "multi-task," as well as improvement in focus and productivity, as a result of medications.  Id.  Although, the ALJ explained, plaintiff reported feeling overwhelmed by situational stressors and numerous responsibilities as a parent and homemaker, there was no evidence of a "grossly disturbed mental status" and plaintiff's thought processes were consistently focused on day-to-day responsibilities.  Id.

As to Dr. Truhn, the ALJ noted that plaintiff underwent a psychological evaluation with Dr. Truhn in July 2009, four and one-half years after her date of last insured.  Tr. 25.  The ALJ found that the relevance of Dr. Truhn's opinion on a period that concluded approximately five years earlier was not apparent.  Id.  Having seen plaintiff only once, the ALJ determined that Dr. Truhn was not a treating source.  Id.  The ALJ explained that

> [Dr. Truhn's] findings are not consistent with other detailed substantial evidence
> from claimant's long-term treating counselor, Ms. Myers.  Although Ms. Myers is
> not a physician, evidence from "other sources," such as a nurse practitioner, can
> be included for consideration within the context of the sequential evaluation.  I
> specifically find the findings detailed in her notes are more persuasive and warrant
> greater consideration than the conclusory remarks of Dr. Truhn because of the
> duration of contact she had with claimant and the fact that said contact directly
> coincided with the current period of evaluation.

Id.

Plaintiff argues that the ALJ improperly rejected Dr. Truhn's opinion and that NP Mieth-Myers's treatment notes document symptoms that would have interfered with plaintiff's ability to

10 - OPINION & ORDER

perform work-related activities.[3]

At step two, the ALJ considers the severity of the claimant's impairment(s).  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

In Social Security Ruling (SSR) 85-28 (available at 1985 WL 56856, at *3), the Commissioner explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities[;]" see also SSR 96-3p (available at 1996 WL 374181, at *1) ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").  The Ninth Circuit has explained that the step two severity determination is expressed "in terms of what is 'not severe.'"  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity.  Id.  Importantly, as the Ninth Circuit noted, "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  Id. (citing Yuckert, 482 U.S. at 153-54).  "[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working."  SSR 85-28 (1985 WL

_____

[3]  Plaintiff also argues that the ALJ improperly ignored testimony from Nanci at step two, but I have already determined that the ALJ's rejection of Nanci's testimony was not error.

11 - OPINION & ORDER

56856, at *2) (internal quotation omitted).

Dr. Truhn, as noted by the ALJ, examined plaintiff once in July 2009 and opined that (1) plaintiff was experiencing a bipolar II disorder and long-term low-grade depression from 2000 to 2004; and (2) there was a strong possibility that underlying personality issues related to borderline and histrionic features could color her motivation and enthusiasm to participate in a work setting on either a part-time or full-time basis as well as cause problems with motivation, concentration, and attention.  Tr. 604.

As indicated above, the ALJ rejected Dr. Truhn's opinion because it post-dated the relevant period by almost five years, because Dr. Truhn was not a treating source and had no long-term relationship with plaintiff, and because Ms. Mieth-Myers's opinion and treating notes carried more weight.

Plaintiff accurately notes that "'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'"  Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) (noting that "reports containing observations made after the period for disability are relevant to assess the claimant's disability" and "[i]t is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.")).

Based on the controlling Ninth Circuit case law, to the extent the ALJ rejected Dr. Truhn's opinion solely because it was rendered four and one-half years after plaintiff's date of last insured, the ALJ erred.  The ALJ also refused to credit Dr. Truhn's opinions over NP Mieth-Myers's findings because NP Mieth-Myers had a several-year treating relationship with plaintiff and made her notes contemporaneously with the time period at issue.  While this could, in theory,

be a supportable clear and convincing basis for rejecting Dr. Truhn's opinion under the standard

governing the rejection of an examining physician's uncontradicted opinion, I do not accept it as

valid in this case because NP Mieth-Myers's treatment notes do not actually conflict with the

opinions expressed by Dr. Truhn.

Dr. Truhn opined that plaintiff experienced bipolar II disorder and long-term low-grade

depression from 2000 to 2004.  Tr. 604.  NP Mieth-Myers assessed plaintiff as having major

depressive disorder, moderate, and a generalized anxiety disorder.  Tr. 386.  Later, NP Mieth-

Myers indicated that it was very likely that plaintiff had a diagnosis of bipolar disorder II.  Tr.

327.  She prescribed Lamictal, a drug used to treat the disease.  Id.; see

http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000957/.  Thus, the medical diagnoses offered

by Dr. Truhn and NP Mieth-Myers are fairly consistent.

Dr. Truhn also opined that plaintiff could experience problems with motivation,

enthusiasm, concentration, and attention, in a part-time or full-time work setting.  Tr. 604.  While

NP Mieth-Myers's treatment notes do not expressly address workplace limitations, those

treatment notes indicate that despite responding well to various medications, plaintiff continued

to experience problems with multi-tasking, focus, and concentration.  E.g., Tr. 388 (Jan. 3, 2002:

start of treating relationship with NP Mieth-Myers; plaintiff reports problems with concentration

and motivation); Tr. 382 (Feb. 20, 2002:  reports feeling scattered even while taking Zoloft); Tr.

381, 382 (Mar. 12, 2002, Mar. 26, 2002:  feeling more energetic with better focus on Effexor, but

still overwhelmed); Tr. 374 (May 14, 2002:  improved energy, focus, concentration on

Wellbutrin); Tr. 371 (June 11, 2002:  responding well to medications, but continues to have

symptoms of depression and lack of energy and focus); Tr. 364-65 (Oct. 1, 2002:  increase in

depression and anxiety and continued poor energy); Tr. 358 (Apr. 9, 2003: medications adjusted

due to side effects); Tr. 357 (May 6, 2003:  report of mood swings, which may be related to

menstrual cycle but possibly due to prior month's decrease in Effexor; overall doing fairly well);

Tr. 355, 356 (June 9, 2003, June 17, 2003:  change in medication resulted in increased agitation

and irritability and increased sense of apathy; added Strattera); Tr. 354 (July 8, 2003:  improved

energy and concentration on Strattera); Tr. 350 (Feb. 3, 2004:  Strattera still helping with

improved focus, concentration, and organization); Tr. 337 (Oct. 11, 2004:  doing well on current

medications); Tr. 335 (Jan. 20, 2005:  doing well on medications; exercise helping with energy

level); Tr. 333 (Mar. 21, 2005:  feeling disconnected and a little depressed); Tr. 331 (May 5,

2005:  blunted affect, increased depression; some apathy); Tr. 321 (Oct. 3, 2005:  Lamictal

helpful but trouble staying focused and completing tasks).

     Dr. Truhn's suggestion that plaintiff could have trouble with motivation, enthusiasm,

concentration, and attention, is consistent with, not contradicted by, NP Mieth-Myers's treatment

notes over the years.  Although plaintiff's symptoms improved during her treatment, she

continued to experience periods of depression, apathy, and lack of focus.  Thus, to the extent the

ALJ rejected Dr. Truhn's opinion's regarding plaintiff's motivation and concentration because it

was not supported by NP Mieth-Myers's treatment notes, the ALJ erred.[4]

---

     [4] The ALJ also indicated that he rejected Dr. Truhn's opinion because it was solicited by counsel.  This was error.  Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998) ("In the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it.");  Ratto v. Secretary, 839 F. Supp. 1415, 1426 (D. Or. 1993) (examining physician's "findings are no less trustworthy because the examination was procured by the plaintiff rather than the Secretary").
     Additionally, defendant argues that the ALJ properly rejected Dr. Truhn's opinion because it was based on plaintiff's subjective complaints at the time of the examination and those complaints were properly discredited.  This, however, was not an argument put forth by the ALJ

Moreover, NP Mieth-Myer's treatment notes of therapy appointments approximately every three weeks for more than four years, and which were made contemporaneously with the 2000 to 2004 time period at issue, indicate that plaintiff's symptoms, even when controlled on medication, had more than a minimal effect on her ability to function.  E.g., Tr. 382 (disorganized); Tr. 371 (lack of energy, lack of focus); Tr. 362 (forgetful); Tr. 357 (experiencing "brain fade" and difficult time multi-tasking); Tr. 355 (doing homework assigned by therapist difficult because of problems with attentiveness and apathy); Tr. 346 (problems setting priorities).  Thus, while the records do not support some of Nanci's subjective testimony suggesting that plaintiff was regularly incapacitated by her symptoms, they do show that she routinely struggled with the ability to concentrate effectively, to accomplish assigned tasks effectively, and to complete more than one task at a time.  As a result, the treatment notes show that her mental impairment(s) are more substantial than "not severe" as that term has been explained by the regulations and the Ninth Circuit.  Accordingly, the ALJ erred when he found at step two that plaintiff's only severe impairment was musculoskeletal syndrome.

Defendant contends that any error at step two was harmless because the ALJ resolved step two in plaintiff's favor when he found that she had a severe impairment and proceeded with

---

in support of his decision and thus, I may not consider it.  Stout v. Commissioner, 454 F.3d 1050, 1054 (9th Cir. 2006) (court is "constrained to review the reasons the ALJ asserts") (internal quotation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

Defendant also argues that the ALJ properly rejected Dr. Truhn's opinion because it expressed only what plaintiff "could" possibly have experienced during the relevant period and thus, was vague and not probative.  Again, however, while Dr. Truhn's opinion was not definitive and may well be vulnerable for that reason, this was not a basis that the ALJ gave for rejecting the opinion.

15 - OPINION & ORDER

the remaining steps in the sequential analysis.  An ALJ's error is harmless when it is "inconsequential to the ultimate nondisability determination."  <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1055 (9th Cir. 2006).  Here, while the ALJ's error at step two may have been harmless in the sense that he did not render his decision of non-disability at this step, he nonetheless failed to incorporate any mental impairment-related symptoms into his RFC.  Indeed, the ALJ himself indicated that plaintiff had mild impairments in concentration, persistence, and pace, yet he did not account for this in his RFC.  <u>See</u> Tr. 22 (stating that plaintiff had no more than mild limitations in concentration, persistence, and pace).

This is where the error at step two becomes prejudicial.  <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to discuss the claimant's impairment in the severity determination was harmless where the ALJ considered any limitations posed by the impairment at step four); <u>Graybeal v. Astrue</u>, No. 3:10–cv–06387–PK, 2011 WL 6019434, at *6 (D. Or. Nov. 2, 2011) ("An ALJ's erroneous finding that an impairment is non-severe constitutes harmless error, however, if the ALJ resolves step two in the claimant's favor <u>and properly considers limitations imposed by the impairment at other steps of the sequential process</u>.") (emphasis added).  The ALJ's error at step two was not harmless.

Plaintiff argues that a remand for an award of benefits is required.  The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  <u>Rodriguez v.</u>

16 - OPINION & ORDER

Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

An award of benefits is appropriate when "(1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) there are not outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003) (internal quotation omitted).

Here, while the ALJ improperly rejected Dr. Truhn's opinion, it remains that his opinion was not definitive as to plaintiff's work-related limitations. E.g., Tr. 604 (issues "could . . . color [plaintiff's] motivation and enthusiasm . . . as well as cause problems with motivation, and concentration and attention") (emphasis added); Tr. 611 ("stress of a routine job could have exacerbated her limitations") (emphasis added). Thus, even when that opinion is credited, it does not establish disability. Moreover, the ALJ's rejection of Nanci's husband's testimony was not erroneous. As a result, the vocational expert's responses to hypotheticals posed by plaintiff's counsel at the hearing which were based on Nanci's testimony as well as Dr. Truhn's report, do not establish disability. Remand for additional proceedings, including consideration of plaintiff's mental limitations in the RFC, is required.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

17 - OPINION & ORDER

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.


Dated this __21st__ day of __December_____, 2011


_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge


18 - OPINION & ORDER